UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x
DR. KIMBERLY PERSAUD, KIMBERLY PERSAUD,
KIMBERLY FREEMAN,

                             Plaintiff,

         v.

TALENT FOR 59TH STREET BLOOMINGDALES,
BLOOMINGDALES, MACYS, RECRUITER PAIGE
WALLS, MATTHEW SUNG, CHRISTAL JOHNSON,
COLLEGE RECRUITER JULIE BROWNSTONE,
TRACEE WILLIAMS, SHANADE HERNANDEZ,
AMBER HEAVEN, ELINA SINGH, PEOPLE
LEADER WORKING REMOTE MORGAN DENNIS,
STEPHEN MCKINNEY, ELINA SINGH, AMANDA J.
SCHAFFER, TRACY M. PRESTON, RHODARICA
CAVALENTE, DEBORAH PACK, NIKKITA
WASHINGTON, DEBBIE BRESSETTE, DEBORAH
BRESSETTE, FRANCOIS RIVERA, DANIEL
RUCKER, TONY SPRING CEO MACYS
BLOOMINGDALES,

                             Defendants.
------------------------------------------------------------------------ x

**REPORT AND
RECOMMENDATION**

26-CV-368
(Gonzalez, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

    *Pro Se* Plaintiff Kimberly Persaud[1] commenced this action on December 3, 2025, against

Defendants "Talent for 59th Street Bloomingdales," "Bloomingdales," "Macys," Paige Walls,

Matthew Sung, Christal Johnson, Julie Brownstone, Tracee Williams, Shanade Hernandez, Amber

---

[1] The Summons and Complaint name Plaintiff as "Dr. Kimberly Persaud," "Kimberly Persaud," and "Kimberly Freeman," who all appear to be the same person. *See* Dkt. No. 1-1 at 2, 4. To the extent, however, any of these individuals are not actually Kimberly Persaud, the Court notes that "a person who is not an attorney may represent herself *pro se* but may not represent another individual or entity." *Waheed v. Police Dep't 19th Precinct (NYPD)*, No. 25-CV-9101 (LLS), 2026 WL 539731, at *2 (S.D.N.Y. Feb. 26, 2026) (citations omitted). For purposes of the instant motion, the Court treats Plaintiff as a singular individual: Kimberly Persaud.

Heaven, Elina Singh,[2] Morgan Dennis, Stephen Mckinney, Amanda J. Schaffer, Tracy M. Preston, Rhodarica Cavalente, Deborah Pack, Nikkita Washington, Debbie Bressette, Deborah Bressette, Francois Rivera, Daniel Rucker, and Tony Spring (collectively, "Defendants"), alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.* *See generally* Dkt. No. 1-1. Defendants Bloomingdale's, LLC ("Bloomingdale's")[3] and Macy's, Inc. ("Macy's")[4] removed this action to this Court on January 21, 2026. Dkt. No. 1.

Currently pending before this Court, on a referral from the Honorable Hector Gonzalez, is the unopposed motion of Bloomingdale's and Macy's seeking to compel arbitration and stay the action pending arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* ("FAA"). *See* Dkt. Nos. 12, 13; Referral Order, dated Mar. 18, 2026.

For the reasons set forth below, the undersigned respectfully recommends that the motion be granted and that the Court stay the action pending the outcome of the arbitration.

## I.   Background

### A.   Relevant Procedural History

Plaintiff filed this action in the Supreme Court of the State of New York, Kings County, on December 3, 2025. Dkt. No. 1-1. Bloomingdale's and Macy's were served with the Summons and Complaint on December 31, 2025. Dkt. No. 1 ¶ 5. On January 21, 2026, Bloomingdale's and Macy's removed the action to the United States District Court for the Eastern District of New York on the basis of federal question jurisdiction. *Id.* ¶¶ 6-7. To date, Bloomingdale's and Macy's are

---

[2] Defendant Elina Singh is named twice in the caption. *See* Dkt. No. 1-1 at 2, 4.

[3] Bloomingdale's is incorrectly named in the Complaint as "Bloomingdales." Dkt. No. 1 at 1. Bloomingdale's is a wholly owned subsidiary of Macy's. *See* Dkt. No. 2 at 1.

[4] Macy's is incorrectly named in the Complaint as "Macys." Dkt. No. 1 at 1.

the only Defendants who have appeared in this action.  There is no indication on the docket that any of the other named Defendants have been served.

On January 28, 2026, Bloomingdale's and Macy's filed their Answer to the Complaint. Dkt. No. 7.  On January 29, 2026, Bloomingdale's and Macy's filed a letter stating their intention to file a motion to compel arbitration and stay this action pursuant to the FAA.  Dkt. No. 8 at 1. On February 2, 2026, Judge Gonzalez directed Bloomingdale's and Macy's to file their anticipated motion by February 12, 2026, and directed Plaintiff to file her response by March 16, 2026.  Text Order, dated Feb. 2, 2026.  As discussed further below, Bloomingdale's and Macy's complied with Judge Gonzalez's scheduling order; Plaintiff did not.  On March 18, 2026, Judge Gonzalez referred the motion to compel arbitration and stay the action to the undersigned for a report and recommendation.  Referral Order, dated Mar. 18, 2026.

**B.      The Complaint**

Plaintiff alleges that she was subjected to workplace discrimination in violation of the ADA when she was given "no work schedule . . . after [she was] given an approved work accommodation letter dated 11/06/2025 by [Macy's/Bloomingdale's]."  Dkt. No. 1-1 at 5.  Plaintiff alleges that, although she "was told she could pick up work schedule hours for Luxury Retail Area in [Bloomingdale's] . . . in the online my [Macy's] Insite employee portal during Orientation and by [Defendant] Christal Johnson who [wrote] the ADA accommodations letter," she was sent home "on 11/8/2025 . . . because [Defendant] People Leader Morgan Dennis didn[']t get the ADA start work letter."  *Id.*  Plaintiff contends that Defendant Dennis "did get the email that [Plaintiff] should start work 11/7/2025."  *Id.*

Plaintiff also alleges that "[Defendant] Rhodarica Cavalente kept harassing and calling and leaving voicemails saying there[']s no specific written Area work schedule by [Defendant] People

Leader Morgan Dennis and that [Defendant] Deborah Pack would be calling [Plaintiff]." *Id.* Plaintiff contends that she made "many" complaints about "this workplace disability discrimination and," still, "no work place written schedule existed for her Area." *Id.* Plaintiff alleges that "Asset [Protection] . . . stole [Plaintiff's Bloomingdale's] work ID." *Id.* Plaintiff seeks monetary and injunctive relief. *Id.* at 5, 7.

### C.    The Present Motion

Pursuant to the briefing schedule set by Judge Gonzalez on February 2, 2026, Bloomingdale's and Macy's filed their motion to compel arbitration and stay the action on February 12, 2026. Dkt. Nos. 12-13. In support of their motion, Bloomingdale's and Macy's filed the Declaration of Cynthia Ripak, dated February 11, 2026 ("Ripak Declaration"), and the annexed Exhibits A through D. Dkt. No. 13-1. Ms. Ripak is a Senior Manager of the Office of Solutions InStore for Macy's and its divisions/subsidiaries, including Bloomingdale's. *Id.* ¶ 2. Ms. Ripak is "responsible for the management and administration of Macy's Solutions InSTORE Early Dispute Resolution Program" ("Solutions InSTORE Program" or "Program"), which "covers Bloomingdale's employees." *Id.* ¶ 4. Bloomingdale's and Macy's also filed the Declaration of Nicolas Moreau, dated February 11, 2026 ("Moreau Declaration"), and the annexed Exhibits A through D. Dkt. No. 13-2. Mr. Moreau is a Senior Director of Human Resources Technology, Data and Analytics for Macy's Corporate Services LLC, a "wholly-owned, second tier subsidiary" of Macy's, where he is "responsible for the human resources technology platforms used to collect, store, and manage employee information for eligible employees" of divisions/subsidiaries of Macy's, including Bloomingdale's. *Id.* ¶ 2.

### 1.    The Solutions InSTORE Program

The Solutions InSTORE Program was implemented by Macy's to "surface and resolve disputes as early and fairly as possible."  Dkt. No. 13-1 ¶ 5.  Generally, the Program applies to employees of Macy's "divisions/subsidiaries," including Bloomingdale's.  *Id.*  The Office of Solutions InSTORE was established to support the Program.  *Id.* ¶ 6.

According to the Solutions InSTORE Program Plan Document ("Plan Document"), effective June 1, 2014,[5] which explains the Program "in depth," the Program contains four separate steps for resolving workplace disputes.  *Id.* ¶ 8; *Id.* at 16-55.  A copy of the Plan Document, the Solutions InSTORE New Hire Brochure ("Brochure"),[6] and the Early Dispute Resolution Program Election Form ("Election Form") are given to newly hired employees.  *Id.* ¶ 8; *see also id.* at 16-29 (Brochure), 30-31 (Election Form), 32-55 (Plan Document).

Step 1, known as "Open Door," is an "informal way to discuss [an employee's] problem with [their] supervisor or any other member of [the] local management team."  *Id.* at 20.  Step 2 includes independent review of the complaint/decision by "Senior Human Resources Management."  *Id.*; *see also id.* at 34 ("The Senior Vice President or another Human Resources executive who was not involved in the Open Door process will review your issue.  They'll get back to you in writing.").  "Steps 1 and 2 are available for any disputes relating to your employment with the Company."  *Id.* at 34, 35.

---

[5] The Solutions InSTORE Program was first implemented in 2003, and the Plan Document was subsequently revised and implemented twice, with effective dates of January 1, 2007 and June 1, 2014. Dkt. No. 13-1 ¶ 7.  The June 1, 2014 Plan Document was in effect during Plaintiff's employment.  *Id.* ¶¶ 7, 8.  Accordingly, the June 1, 2014 version is addressed here.

[6] According to the Ripak Declaration, the Brochure "explains the Solutions InSTORE Program in simple descriptive terms."  Dkt. No. 13-1 ¶ 19.

Steps 3 and 4, meanwhile, are available only for "covered claims involving legally protected rights," meaning "claims the employee could raise in a court or before an administrative agency." *Id.* at 35. If an employee is not satisfied with the result at Step 2, and the employee "believe[s] [their] situation involves legally protected rights," they can proceed to Step 3, "Request for Reconsideration," which includes a "formal review of eligible claims" by either a peer panel or an executive member of the Solutions InSTORE Office. *Id.* at 20, 34.

Step 4 is arbitration, which the Brochure describes as "similar to a court proceeding, but decided by an independent 'Arbitrator' who is approved by the American Arbitration Association (AAA), and is not an employee of [the] Company." *Id.* at 20. An employee is "not required to utilize each step of the Program to initiate Arbitration." *Id.* at 27. The Plan Document states that an arbitrator's final determination is "binding on both the Company and [the employee]," although "[n]othing in the Solutions InSTORE Program . . . prevents [the employee] from filing, at any time, a charge or complaint with a government administrative agency like the Equal Employment Opportunity Commission, the Department of Justice, the Department or Labor or the National Labor Relations Board." *Id.* at 34.

According to the Plan Document, "[e]xcept as otherwise limited, all employment-related legal disputes, controversies, or claims arising out of, or relating to, employment or cessation of employment, whether arising under federal, state or local decisional or statutory law ('Employment-Related Claims'), are covered claims and shall be settled exclusively by final and binding arbitration." *Id.* at 38. Further, "[a]rbitration applies to any and all covered disputes, controversies or claims whether asserted by the employee against the Company and/or against any employee, officer or other alleged agent of the Company." *Id.* In addition, arbitration "applies to any and all covered disputes, controversies or claims asserted against the employee by the

6

Company, any officer, or any other employee or alleged agent of the Company." *Id.* The Plan Document gives several examples of Employment-Related Claims subject to arbitration, including "claims arising under . . . the Americans with Disabilities Act." *Id.*

The Plan Document describes arbitration as a "voluntary condition of employment," as employees are "given the option of excluding themselves from Step 4 arbitration within 30 days of hire." *Id.* at 37. The Plan Document specifies that,

> [e]xcept in states calling for different election procedures, all employees agree to be covered by Step 4 – Arbitration by accepting or continuing employment with the Company after [June 1, 2014]. Employees are given the option to exclude themselves from Arbitration by completing an election form within 30 days of hire or, upon specific notice, other prescribed time frame. Until and unless an employee chooses to be excluded from arbitration within the prescribed time frame, the employee is covered by Step 4 – Arbitration. In other states, your election form will allow you to affirmatively choose whether you want to be covered by this final step- Arbitration.

*Id.* at 35; *see also id.* at 28 (portion of the Brochure explaining that employees may opt out of arbitration). The Plan Document also notes that "[w]hether an employee chooses to remain covered by arbitration or to exclude him or herself has no negative effect on the employee's employment." *Id.* at 37.

Further, "[i]f a party files a lawsuit in court to resolve claims subject to arbitration, both [parties] agree that the court shall stay or, if appropriate, dismiss the lawsuit and require the claim to be resolved through the Solutions InSTORE Program." *Id.* at 39. The Plan Document contains additional information regarding the commencement of arbitration (written, signed notice) and other arbitration rules and procedures, including information concerning selecting an arbitrator, representation, discovery, evidence, fees, and remedies. *See id.* at 40-51.

To ensure that employees are provided with information about the Solutions InSTORE Program, in addition to receiving copies of the Brochure, Plan Document, and Election Form,

7

employees are presented with the Solutions InSTORE New Hire Acknowledgement form ("Acknowledgement Form") in electronic form, which asks the employee to verify that the employee has received copies of the Brochure, Plan Document, and Election Form, and that the employee understands that if the employee does not opt out of Step 4 within thirty days of beginning employment, any employment disputes will be resolved in arbitration. *Id.* at 57-58*; see also* Dkt. No. 13-2 ¶ 10. The Acknowledgement Form also states where the employee may find additional information about the Program, including from the Office of Solutions InSTORE. Dkt. No. 13-1 at 57. The employee must view the Acknowledgement Form before the computer system permits the employee to enter an electronic signature on the document. Dkt. No. 13-2 ¶ 9.

In addition, a new hire orientation video is shown to all newly hired employees and further explains the Program and opt-out procedure. Dkt. No. 13-1 ¶¶ 17, 25; *id.* at 60-63. To view the video, the newly hired employee is "required to enter his or her employee ID number and verify her first name, last name, division and location." *Id.* ¶ 25; *see also* Dkt. No. 13-2 ¶ 17. "At the conclusion of the video, the employee [is] required to check a box stating, 'I verify that I have viewed the entire Solutions InSTORE presentation' and again enter his or her employee ID." Dkt. No. 13-1 ¶ 25. After completing this verification, the fact that the video was completed is reflected in the employee's "training records." *Id.* The computer system will not mark the video as having been completed until the entire video has been played. Dkt. No. 13-2 ¶ 17.

Employees may also access information regarding the Program on the Solutions InSTORE Program webpage on the Macy's employee website. Dkt. No. 13-1 ¶ 17. "[T]he Solutions InSTORE website . . . can be accessed by the employee on any computer or handheld device with an Internet connection." *Id.* ¶ 26. Both the Brochure and the Acknowledgement Form provide the

8

URL and state that employees may obtain another copy of the Plan Document there. *Id.* ¶¶ 22, 24; *id.* at 28, 57.

### 2.    Plaintiff's Employment Records

Plaintiff was hired by Bloomingdale's as a "seasonal sales employee" on October 27, 2025. Dkt. No. 13-1 ¶ 16; *see also* Dkt. No. 13-2 at 21.  Upon being hired, Plaintiff was provided with a copy of the Brochure, which includes the Plan Document and Election Form.  Dkt. No. 13-1 ¶ 23.  On October 27, 2025, Plaintiff electronically signed the Acknowledgement Form.  *Id.* ¶¶ 17, 24; *id.* at 57-58; *see also* Dkt. No. 13-2 at 10, 14-15.  On October 31, 2025, Plaintiff viewed the entire new hire orientation video regarding the Solutions InSTORE Program.  Dkt. No. 13-1 ¶¶ 17, 25; *id.* at 65; Dkt. No. 13-2 ¶ 17; *id.* at 41.

Bloomingdale's and Macy's have no record of Plaintiff submitting an Election Form to opt out of Step 4 of the Program/arbitration.  Dkt. No. 13-1 ¶ 30.  Their records reflect that Plaintiff contacted the Office of Solutions InSTORE related to Step 1 and 2 of the Program, but "at no time did she question or challenge her inclusion in the arbitration portion of the Solutions InSTORE Program."  *Id.* ¶ 33.

### D.    Plaintiff's Response[7]

On March 2, 2026, Plaintiff filed a handwritten letter stating that she is "requesting to keep or stay in Kings Supreme/Civil Court."  Dkt. No. 18.  Plaintiff argued that she is "<u>disabled</u> and this is a workplace discrimination wrongful termination lawsuit is [*sic*] for small dollars. [Plaintiff]

---

[7] "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments they *suggest*.'"  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citations omitted).

do[es] not move this Equal Opportunity Lawsuit (EEOC) to this court house."[8]  *Id.*  (underline in original).

On March 17, 2026, the Court acknowledged receipt of Plaintiff's March 2, 2026 letter and indicated that it does not appear to respond to the pending motion.  Text Order, dated Mar. 17, 2026.  The Court *sua sponte* extended Plaintiff's time to respond to the motion to March 25, 2026.  *Id.*  Plaintiff failed to respond by March 25, 2026.  On March 26, 2026, the Court *sua sponte* further extended Plaintiff's time to respond to April 2, 2026.  Text Order, dated Mar. 26, 2026.  No response has been filed by Plaintiff to date.  Accordingly, the undersigned will consider the motion to be unopposed.  *See Hawkins v. Synchrony Bank*, No. 23-CV-6583 (EK) (VMS), 2025 WL 890476, at *2 (E.D.N.Y. Mar. 24, 2025) (considering defendants' motions to compel arbitration and for a more definite statement as unopposed when *pro se* plaintiff only filed a letter asking the Court to "return this action to Small Claims Court" but did not mention either of defendants' motions, "even though the District Court gave Plaintiff a date to file opposition papers to both motions"); *Peyser v. Kirshbaum*, No. 12-CV-2857 (KBF), 2012 WL 6200739, at *2 (S.D.N.Y. Dec. 11, 2012) (treating motion to compel arbitration as unopposed in light of the respondents' failure to file an opposition prior to the Court-ordered deadline).

## II.     Standard of Review

The FAA provides that,

> [i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such

---

[8] Plaintiff also noted that she is "not being served any documents for court."  Dkt. No. 18.  There is no indication, however, that the orders and other documents mailed to Plaintiff's address of record by the Clerk of Court or counsel for Bloomingdale's and Macy's have been returned as undeliverable or otherwise not delivered to Plaintiff.  Plaintiff has not provided an updated address of record or additional updated contact information.  Plaintiff "has an ongoing duty to update the Court if [her] mailing address has changed, or changes at any juncture."  *Thompson v. Snortland*, No. 19-CV-4743 (PKC) (LB), 2022 WL 1597402, at *1 (E.D.N.Y. May 19, 2022).

> suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.  Under the FAA, "an agreement to arbitrate is 'valid, irrevocable, and enforceable.'" *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 235 (2d Cir. 2006) (quoting 9 U.S.C. § 2).  "This provision establishes 'a liberal federal policy favoring arbitration agreements,'" and "requires courts to enforce agreements to arbitrate according to their terms . . . even when the claims at issue are federal statutory claims." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (citations omitted); *see also New Prime Inc. v. Oliveira*, 586 U.S. 105, 120 (2019) ("Congress adopted the Arbitration Act in an effort to counteract judicial hostility to arbitration and establish 'a liberal federal policy favoring arbitration agreements.'" (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983))).  "Having made the bargain to arbitrate, the party should be held to it" unless Congress has indicated otherwise.  *Arciniaga*, 460 F.3d at 235 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).

The liberal policy favoring arbitration, however, "is limited by the principle that 'arbitration is a matter of consent, not coercion. Specifically, arbitration is a matter of contract, and therefore a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit.'" *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 395 (2d Cir. 2015) (quoting *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004)).

On a motion to compel arbitration, the Court must determine: "(1) 'whether the parties agreed to arbitrate'; (2) 'the scope of that agreement'; and, (3) 'if federal statutory claims are asserted, . . . whether Congress intended those claims to be nonarbitrable.'"  *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (quoting *Genesco, Inc. v. T. Kakiuchi & Co. Ltd.*, 815 F.2d

11

840, 844 (2d Cir. 1987)). "The party seeking to compel arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101-02 (2d Cir. 2022) (citations omitted). This burden on the moving party "does not require the moving party to show that the agreement would be enforceable—only that an agreement to arbitrate existed." *Id.* at 102 (citation omitted). The court applies "ordinary state-law principles that govern the formation of contracts." *Davitashvili v. Grubhub Inc.*, 131 F.4th 109, 115 (2d Cir. 2025) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *see also Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50 (2d Cir. 2022) (stating that arbitration agreement-formation questions are determined "by applying the law of the state at issue" (citation omitted)). "Once the existence of an agreement to arbitrate is established, the burden shifts to the party seeking to avoid arbitration to 'show[] the agreement to be inapplicable or invalid.'" *Zachman*, 49 F.4th at 102 (citation omitted)).

A court must also determine "whether questions of 'arbitrability' are for the court or the arbitrator to decide." *Davitashvili*, 131 F.4th at 115 (citing *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148-49 (2024)). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clea[r] and unmistakabl[e] evidence that they did so." *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 317 (2d Cir. 2021) (first quoting *First Options of Chi.*, 514 U.S. at 944; and then citing *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1032 (2d Cir. 2014)); *see also Ross v. Finzer*, No. 25-CV-1179 (DEH) (VF), 2025 WL 2860070, at *3 (S.D.N.Y. Oct. 8, 2025) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986))). "The FAA provides that the issue of arbitrability should presumptively be resolved by the courts." *Davitashvili*, 131 F.4th

12

at 117 (citing *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 34 (2014); 9 U.S.C. § 2). "[O]rdinary state-law principles that govern the formation of contracts" are applied to determine the parties' intent. *DDK Hotels*, 6 F.4th at 317 (quoting *First Options of Chi.*, 514 U.S. at 944). "[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 179 (2d Cir. 2021) (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010)).

"Because motions to compel arbitration are governed by a standard 'similar to that applicable for a motion for summary judgment,' a court must 'draw all reasonable inferences in favor of the non-moving party.'" *Barrows*, 36 F.4th at 49 (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)). "[T]he Court undertakes this analysis by considering all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and draws all reasonable inferences in favor of the nonmoving party." *McPherson v. Bloomingdale's, LLC*, No. 23-CV-1084 (JMA) (ARL), 2023 WL 8527462, at *4 (E.D.N.Y. Dec. 8, 2023) (citing *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017); *Nicosia*, 834 F.3d at 229); *see also Davitashvili*, 131 F.4th at 115 (applying a "standard similar to that applicable for a motion for summary judgment," that is, "courts must 'consider all relevant, admissible evidence submitted by the parties' and must 'draw all reasonable inferences in favor of the non-moving party'" (citation omitted)).

"A party resisting arbitration on the ground that no agreement to arbitrate exists must submit sufficient evidentiary facts in support of this claim in order to precipitate the trial contemplated by 9 U.S.C. § 4." *Diaz v. Wanrong Trading Corp.*, 810 F. Supp. 3d 379, 390 (E.D.N.Y. 2025) (quoting *Manning v. Energy Conversion Devices, Inc.*, 833 F.2d 1096, 1103 (2d

13

Cir. 1987)); *see also Barrows*, 36 F.4th at 50 (stating that the nonmovant must "counter with at least '*some evidence* . . . to substantiate [her] denial' that an agreement had been made" (quoting *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 462 F.2d 673, 676 (2d Cir. 1972) (emphasis added))). "Conclusory statements or mere assertions are insufficient." *Diaz*, 810 F. Supp. 3d at 390 (citations omitted).

Moreover, "[a] district court must stay proceedings once it is satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding." *Ziboukh v. Whaleco, Inc.*, 795 F. Supp. 3d 349, 370-71 (E.D.N.Y. 2025) (quoting *Nicosia*, 834 F.3d at 229); *see also Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, . . . the FAA compels the court to stay the proceeding."); *JLM Indus.*, 387 F.3d at 169 (holding that a court, when considering a motion to compel, must first "determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration" (citation omitted)). In other words, unless the parties consent to dismissal, proceedings must be stayed "when all of the claims in an action have been referred to arbitration." *Hu v. Barclays Cap. Inc.*, No. 24-CV-7580 (JPO), 2025 WL 1307700, at *1 (S.D.N.Y. May 6, 2025) (quoting *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015)).

14

### III.    Discussion

#### A.    The Parties Agreed to Arbitration

"Arbitration is a matter of contract and consent, and . . . disputes are subject to arbitration if, and only if, the parties actually agreed to arbitrate those disputes." *Rubinstein v. Vivid Seats Inc.*, No. 24-CV-1387 (PKC) (AYS), 2025 WL 2773161, at *5 (E.D.N.Y. Sep. 29, 2025) (quoting *Coinbase*, 602 U.S. at 145). Bloomingdale's and Macy's have the initial burden of demonstrating that an agreement to arbitrate was made. *See McPherson*, 2023 WL 8527462, at *4 (quoting *Zachman*, 49 F.4th at 101-02). "Whether such an agreement existed is a question of applicable state contract law." *Id.* (citing *Zachman*, 49 F.4th at 101; *Barrows*, 36 F.4th at 50).

Here, Bloomingdale's and Macy's contend that New York law governs pursuant to the arbitration agreement. *See* Dkt. No. 13 at 22. The Plan Document contains a choice of law provision; namely, the Plan Document states that "[t]he Arbitrator shall apply the substantive law . . . of the state in which the employee is or was employed," and where a claim arises under federal law but there is "no controlling United States Supreme Court authority, the Arbitrator shall follow the substantive law that would be applied by the United States Court of Appeals and the United States District Court for the District in which the employee is or was employed." Dkt. No. 13-1 at 47. It is undisputed that Plaintiff was employed in New York. *Id.* ¶ 16; Dkt. No. 1-1 at 5. Accordingly, because the Plan Document's choice of law provision requires that Plaintiff's claims be evaluated under New York law, the undersigned analyzes whether a contract was formed under New York law. *See McPherson*, 2023 WL 8527462, at *4 (applying New York law pursuant to the same choice of law provision); *Zachman*, 49 F.4th at 101 (evaluating arbitration clause under New York law consistent with the agreement's choice of law provision).

15

Under New York law, there must be an offer, acceptance, consideration, mutual assent, and intent to be bound to form a valid contract. *Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.*, No. 23-8083, 2024 WL 4315128, at *2 (2d Cir. Sep. 27, 2024) (quoting *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004)). Here, Bloomingdale's and Macy's argue that Bloomingdale's made an offer to arbitrate when it "notified [Plaintiff] about the Solutions InSTORE Program and Step 4—Arbitration in the documentation and information materials provided to her." Dkt. No. 13 at 22. They argue that "Plaintiff expressly acknowledged receiving the Brochure and Plan Document" when she signed the Acknowledgement Form on October 27, 2025. *Id.* at 23 (citations omitted). Bloomingdale's and Macy's further assert that "Plaintiff accepted the offer to arbitrate her employment-related claims by continuing her employment and by declining the opportunity to opt out of Step 4-Arbitration." *Id.*

The undersigned agrees with Bloomingdale's and Macy's that arbitration was offered and accepted with mutual assent. It is clear that the Plan Document—which is explained in the Brochure—constitutes an offer to arbitrate employment-related disputes between Bloomingdale's and Macy's and their employees as part of the Solutions InSTORE Program, with an option for the employee to opt-out of arbitration within thirty days of hire. *See* Dkt. No. 13-1 at 32-55. The Plan Document states that, "all employees agree, as a condition of employment, to arbitrate all disputes not otherwise excluded under the terms of the Plan," but "arbitration is a voluntary condition of employment," since "[e]mployees are given the option of excluding themselves from Step 4 arbitration within 30 days of hire." *Id.* at 37. An employee opts out of arbitration by "completing an election form within 30 days of hire." *Id.* at 35. In short, arbitration is not a condition of employment if the employee opts out of arbitration.

16

Upon being hired on October 27, 2025, Plaintiff was provided with a copy of the Brochure, which includes the Plan Document and Election Form. *Id.* ¶¶ 16, 23. Bloomingdale's and Macy's filed declarations to support the contention that Plaintiff received these materials on October 27, 2025. *See generally* Dkt. Nos. 13-1, 13-2. Bloomingdale's and Macy's also filed a copy of the Acknowledgement Form that Plaintiff signed on October 27, 2025. Dkt. No. 13-1 at 57-58; *see also* Dkt. No. 13-2 at 10, 14-15. The Acknowledgement Form asks the employee to verify that the employee received copies of the Brochure, Plan Document, and Election Form, and that the employee understands that if the employee does not opt out of Step 4 within thirty days of beginning employment, any employment disputes will be resolved in arbitration. Dkt. No. 13-1 at 57-58. The Acknowledgement Form describes where the employee may find additional information about the Program, including from the Office of Solutions InSTORE. *Id.* at 57. The employee must view the Acknowledgement Form before the computer system permits the employee to enter an electronic signature on the document. Dkt. No. 13-2 ¶ 9. To opt out of arbitration, Plaintiff needed to submit the Election Form to the Office of Solutions InSTORE by November 26, 2025. But, according to Bloomingdale's and Macy's, Plaintiff never submitted an Election Form. Dkt. No. 13-1 ¶ 30. Plaintiff has not argued otherwise.

Plaintiff's electronic signature on the Acknowledgement Form and her failure to opt-out via an Election Form support a finding that Plaintiff assented to the arbitration agreement as part of the Solutions InSTORE Program. "Courts have 'routinely upheld arbitration agreements contained in employee handbooks where . . . the employee has signed an acknowledgment form.'" *Gil v. Bensusan*, No. 18-CV-10657 (VEC), 2019 WL 12334706, at *3 (S.D.N.Y. Oct. 30, 2019) (collecting cases, and holding that, where plaintiff employee signed an acknowledgement form stating that he received and read the "Consent to Arbitration" policy, his argument that he did not

17

receive the policy or the employee handbook where it is found failed).  Indeed, even if Plaintiff were to argue that she did not read the Acknowledgement Form before signing, such argument would be futile because "[u]nder New York Law, a party will 'not be excused from his failure to read and understand the contents' of a document."  *Id.* (quoting *Victorio v. Sammy's Fishbox Realty Co., LLC*, No. 14-CV-8678 (CM), 2015 WL 2152703, at *11 (S.D.N.Y. May 6, 2015)); *see also id.* at *4 ("Notice may also be presumed when there is evidence that the employer sent the policy through email or when the employee was told that it was their responsibility to read the policy." (citing *Brown v. St. Paul Travelers Cos., Inc.,* 331 F. App'x 68, 69 (2d Cir. 2009); *McAllister v. East*, 611 F. App'x 17 (2d Cir. 2015); *Patterson v. Ramours Furniture Co., Inc.*, 96 F. Supp. 3d 71, 76 (S.D.N.Y. 2015))).  Furthermore, the records of Bloomingdale's and Macy's show that Plaintiff viewed the entire new hire orientation video regarding the Solutions InSTORE Program on October 31, 2025, supporting a finding of additional notice.  Dkt. No. 13-1 ¶¶ 17, 25; *id.* at 65; Dkt. No. 13-2 ¶ 17; *id.* at 41.  While the arbitration portion of the Solutions InSTORE Program is a "voluntary condition of employment," Dkt. No. 13-1 at 37, Plaintiff did not opt out within thirty days of her hire, despite being on notice of such requirement.

Additionally, courts have "repeatedly held" that, as here, "an employee who continues to work after notice that claims against the employer will be subject to binding arbitration and who do not affirmatively opt out of arbitration, have agreed, by their conduct, to arbitrate any claims against the employer." *Boves v. Aaron's Inc.*, No. 18-CV-5 (HBP), 2019 WL 1206698, at *4 (S.D.N.Y. Mar. 14, 2019) (collecting cases); *see also McPherson*, 2023 WL 8527462, at *5 ("Under New York law, a contract may be formed . . . by conduct that demonstrate[s] the parties' mutual assent." (quoting *Manigault v. Macy's E., LLC*, 318 F. App'x 6, 8 (2d Cir. 2009))).  "Under those circumstances, the employee's continued employment serves as an 'objective

18

manifestation[]' of the employee's intent to be bound." *Rightnour v. Tiffany & Co.*, 239 F. Supp. 3d 744, 752 (2017). Indeed, courts in this Circuit have repeatedly found that, under New York law, "signing the Acknowledgment Form and failing to timely submit the Election Form constitute an agreement to arbitrate" under the Solutions InSTORE Program. *McPherson*, 2023 WL 8527462, at \*5 (collecting cases); *see also Crawley v. Macy's Retail Holdings, Inc.*, No. 15-CV-2228 (KPF), 2017 WL 2297018, at \*5 (S.D.N.Y. May 25, 2017); *Pierre v. Macy's Inc.*, No. 16-CV-2556 (JMA) (AKT), 2016 WL 11652066, at \*3-4 (E.D.N.Y. Nov. 23, 2016); *Teah v. Macy's Inc.*, No. 11-CV-1356 (CBA) (MDG), 2011 WL 6838151, at \*5 (E.D.N.Y. Dec. 29, 2011). In fact, "the Second Circuit has held that an employee's continued employment after being advised that it was his responsibility to read and understand the company policy constitutes acceptance of an arbitration policy." *Gil*, 2019 WL 12334706, at \*3 (citing *Brown*, 331 F. App'x at 70); *see also Manigault*, 318 F. App'x at 8 (holding that, even without a signed agreement, an employee's continued employment after receiving notice of an arbitration policy constitutes assent to such an agreement); *DuBois v. Macy's E. Inc.*, 338 F. App'x 32, 33 (2d Cir. 2009) (holding that plaintiff's continued employment after receiving notice of the Solutions InSTORE Program and the lack of evidence that he submitted an Election Form constituted agreement to mandatory arbitration).

The Court recognizes that the Second Circuit's decisions holding that continued employment constitutes assent to an arbitration agreement, as well as similar district court cases, appear to involve circumstances where the plaintiff's employment continued *beyond* the opt-out period, if any. *See, e.g.*, *Pierre*, 2016 WL 11652066, at \*4 (holding that plaintiff, who worked at Macy's for more than three years, "manifested her assent to arbitrate through her conduct when she failed to opt out of arbitration during the prescribed time period" (citation omitted)); *Feroce*

19

*v. Bloomingdale's Inc.*, No. 12-CV-5014 (SJF) (GRB), 2014 WL 294199, at *6 (E.D.N.Y. Jan. 24, 2014) (holding that plaintiff consented to arbitration by failing to opt out "after being informed of the Program and opt out procedure through multiple channels," and "continu[ing] to work at Bloomingdale's" beyond the opt-out period); *Teah*, 2011 WL 6838151, at *4-5 (holding that plaintiff who worked at Macy's for more than three months manifested his assent "by declining to opt out of Step 4 after being informed through multiple channels of his ability to do so"); *Brown v. Coca-Cola Enters., Inc.*, No. 08-CV-3231, 2009 WL 1146441, at *7 (E.D.N.Y. Apr. 28, 2009) (Bianco, J.) (finding that, based on plaintiff's continued employment for more than nine months after implementation of mandatory arbitration, plaintiff accepted the terms of the agreement to arbitrate any legal disputes); *Gil*, 2019 WL 12334706, at *4-5 (finding that plaintiff Martinez's continued employment for several years after receiving notice of the arbitration term manifested assent).

Based on the allegations in the Complaint and Plaintiff's failure to respond to the present motion, it is not clear whether Plaintiff continued to be employed after November 8, 2025, just twelve days after her employment began on October 27, 2025. *See* Dkt. No. 13-1 ¶ 16; Dkt. No. 1-1 at 5. Accordingly, the relevant question is whether Plaintiff's failure to opt out of arbitration within thirty days of her hire constitutes assent to the arbitration agreement within the Solutions InSTORE Program, even assuming that Plaintiff's employment ended less than thirty days after it began.

Ultimately, the undersigned respectfully recommends that the Court find that Plaintiff *did* assent to the arbitration agreement by continuing her employment beyond October 27, 2025—the date that she signed the Acknowledgement Form confirming she received notice of the arbitration agreement—even if her employment ended within the thirty-day opt-out period. The arbitration

20

provisions of the Solutions InSTORE Program covered Plaintiff's employment-related disputes from the moment she received notice of the provisions—that is, October 27, 2025. *See* Dkt. No. 13-1 at 35 ("Until and unless an employee chooses to be excluded from arbitration within the prescribed time frame, the employee is covered by Step 4 – Arbitration."). Even if Plaintiff's employment was terminated by either herself or Bloomingdale's on or around November 8, 2025, the twelve-day period of employment was adequate to submit the Election Form if she did not want to arbitrate. *See Clearfield v. HCL Am. Inc.*, No. 17-CV-1933 (JMF), 2017 WL 2600116, at *2 (S.D.N.Y. June 15, 2017) (holding that even one day to act to opt out of arbitration upon plaintiff's return from medical leave was "sufficient time to opt out had she wanted to do so"). Moreover, there is no indication that she needed to continue to be employed to have access to or complete the Election Form. Accordingly, even if her employment ended within the thirty-day opt-out period, she still could have mailed the Election Form to the Office of Solutions InSTORE within the thirty days, or by November 26, 2025. Indeed, she could have opted out right after the November 8, 2025 issue that she alleges gave rise to her claim. Therefore, Plaintiff's continued employment—beyond her receiving notice of the arbitration provisions and her failure to opt out of arbitration for the entire opt-out period—constitute assent to arbitration.

Furthermore, there is plainly adequate consideration for the arbitration agreement, as Bloomingdale's and Macy's argue, due to the mutual promises to arbitrate, the offer of continued employment, and Bloomingdale's agreement to pay for a majority of the costs associated with arbitration. *See* Dkt. No. 13 at 26-27 (citations omitted); *Teah*, 2011 WL 6838151, at *5 (citations omitted). At bottom, there is no material issue of fact with respect to whether an arbitration agreement existed.

The undersigned therefore respectfully recommends that the Court find that Plaintiff agreed to arbitrate with Bloomingdale's and Macy's.

### B.    Plaintiff's Claims Are Within the Scope of the Arbitration Agreement

Courts "resolve any doubts concerning the scope of arbitrable issues in favor of arbitrability." *Rubinstein*, 2025 WL 2773161, at *5 (quoting *Daly*, 939 F.3d at 421). "In so doing, [courts] will compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* (quoting *Daly*, 939 F.3d at 421).

Here, the question of whether the parties agreed to arbitrate is to be decided by the Court, as the arbitration agreement is silent on this issue. *See Davitashvili*, 131 F.4th at 117 ("The FAA provides that the issue of arbitrability should presumptively be resolved by the courts." (citing *BG Grp.*, 572 U.S. at 34; 9 U.S.C. § 2)). Bloomingdale's and Macy's do not argue otherwise.

The undersigned respectfully recommends that the Court find that Plaintiff's ADA claims, whether they be construed as stating discrimination, failure to accommodate, retaliation, or other claims arising under the ADA, are subject to arbitration. The Solutions InSTORE Program was promulgated by "Macy's, Inc. and its subsidiaries and Business Units." Dkt. No. 13-1 at 34. Bloomingdale's is a wholly owned subsidiary of Macy's. Dkt. No. 2 at 1. According to the Plan Document, "[e]xcept as otherwise limited, all employment-related legal disputes, controversies, or claims arising out of, or relating to, employment or cessation of employment, whether arising under federal, state or local decisional or statutory law . . . , are covered claims and shall be settled exclusively by final and binding arbitration." Dkt. No. 13-1 at 38. The Plan Document expressly states that covered claims include, but are not limited to, claims arising under the ADA. *See id.* ("Merely by way of example, [covered claims] include, but are not limited to, claims arising under

22

. . . the Americans with Disabilities Act"). It is not disputed that Plaintiff's ADA claims relate to her employment with Bloomingdale's, namely regarding an "approved work accommodation letter" that Plaintiff alleges was not implemented, resulting in her not receiving a work schedule. *See* Dkt. No. 1-1 at 5.

Other courts interpreting the Plan Document have similarly concluded that analogous discrimination, wrongful discharge, and retaliation claims are arbitrable under the Plan Document as part of the Solutions InSTORE Program. *See, e.g.*, *McPherson*, 2023 WL 8527462, at *6 (holding that plaintiff was compelled to arbitrate her Title VII discrimination, hostile work environment, wrongful discharge, and retaliation claims); *Pierre*, 2016 WL 11652066, at *4 (finding the Plan Document's arbitration provision covered claims for, among other things, discrimination, wrongful discharge, and retaliation); *Feroce*, 2014 WL 294199, at *6 (finding that the Plan Document's arbitration provision covered discrimination claims); *Teah*, 2011 WL 6838151, at *7 (same). Nothing here warrants a different result.

Given that Plaintiff's claims are within the scope of the arbitration agreement, the undersigned respectfully recommends that the Court find that Plaintiff's claims are subject to arbitration pursuant to the arbitration agreement.

## C.    Plaintiff's ADA Claims Are Arbitrable

It is well-settled that arbitration clauses in employment contracts, "other than those of transportation workers," are enforceable under the FAA. *Pierre*, 2016 WL 11652066, at *2 (citations omitted). Courts have "repeatedly held that Congress did not intend that . . . ADA claims be nonarbitrable." *LeDeatte v. Horizon Media*, 571 F. Supp. 3d 72, 76-77 (S.D.N.Y. 2021) (collecting cases); *see also Feuer v. Stoler of Westbury, Inc.*, No. 20-CV-6094 (JMA) (JMW), 2021 WL 4820605, at *4 (E.D.N.Y. Oct. 15, 2021) (stating that "the Court is unaware of any

23

authority that precludes arbitration of" plaintiff's, *inter alia*, ADA claims on the basis of congressional intent). And, indeed, the FAA preempts New York law—specifically, New York Civil Practice Law and Rules ("CPLR") § 7515—which otherwise prohibits mandatory arbitration of discrimination claims. *See Padmore v. SDH Servs. W., LLC*, No. 24-CV-6872 (AMD) (TAM), 2025 WL 2783191, at *10 (E.D.N.Y. Sep. 30, 2025) (collecting cases and holding that, "[o]bviously, applying [CPLR § 7515] in this context would be inconsistent with the FAA").

Accordingly, the undersigned respectfully recommends that the Court grant the present motion and compel arbitration of Plaintiff's claims against Bloomingdale's and Macy's.

### D.    Defendants' Motion to Stay the Action

Having recommended that the arbitration agreement is enforceable and that Plaintiff's claims against Bloomingdale's and Macy's fall within its scope, the undersigned also recommends a stay of this action pending arbitration. The FAA mandates that a court "*shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added). "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith*, 601 U.S. at 478.

Here, Bloomingdale's and Macy's request a complete stay of this action pending arbitration. *See* Dkt. No. 13 at 8. There is no question that Plaintiff's claims against Bloomingdale's and Macy's should be stayed. There is a question, however, regarding whether Plaintiff's claims against the twenty-one non-appearing Defendants should also be stayed or whether the Court should, instead, grant only a partial stay of this action. Bloomingdale's and Macy's do not address this issue in their motion.

It is undisputed that the non-appearing Defendants are not parties to the arbitration agreement. It appears, however, from the Complaint and arguments set forth by Bloomingdale's and Macy's that most, if not all, of the non-appearing Defendants are employees, officers, or other agents of Bloomingdale's and/or Macy's, although this is not explicitly stated as to many of the Defendants. *See* Dkt. No. 1-1 at 5; Dkt. No. 13 at 12 n.3. The Plan Document states that "[a]rbitration applies to any and all covered disputes, controversies or claims whether asserted by the employee against the Company and/or *against any employee, officer or other alleged agent of the Company*." Dkt. No. 13-1 at 38 (emphasis added). On the basis of this provision, Bloomingdale's and Macy's note that, "[t]o the extent the Complaint seeks to assert claims against other Bloomingdale's employees, the agreement to arbitrate includes those other employees." Dkt. No. 13 at 12 n.3.

While it is true that "signatories to an arbitration agreement may be compelled to arbitrate claims with a non-signatory" when certain requirements are met, *see Greene v. Kabbalah Ctr. Int'l, Inc.*, 625 F. Supp. 3d 3, 20 (E.D.N.Y. 2022), there is no indication that the non-appearing Defendants have been served and they have not appeared in this action. Thus, the non-appearing Defendants do not seek to compel arbitration. Bloomingdale's and Macy's do not further address this issue in their motion. Accordingly, at this stage in the litigation, the Court need not address whether the arbitration agreement mandates that Plaintiff's claims against the non-appearing Defendants—many of whose relationships to Bloomingdale's and Macy's have not been identified in the record—are subject to arbitration.

Nonetheless, a complete stay is still appropriate. When a court "concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration." *SDJ Invs., LLC v. Collector's Coffee Inc.*, No. 21-2070-CV,

25

2022 WL 17097231, at *2 (2d Cir. Nov. 22, 2022) (quoting *JLM Indus.*, 387 F.3d at 169).  "When 'other persons who are parties to the underlying dispute [are] not [parties] to the arbitration agreement,' 'it may be advisable to stay litigation among the nonarbitrating parties pending the outcome of the arbitration.'" *Id.* (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 20 & n.23). Whether to stay the entire action is within the court's discretion "to control its docket." *Id.* (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 20 n.3).

"In exercising discretion, courts look to factors such as the 'desirability of avoiding piecemeal litigation and the degree to which the cases necessitate duplication of discovery or issue resolution.'" *Hawkins*, 2025 WL 890476, at *3 (quoting *Fasano v. Li*, No. 16-CV-8759 (KPF), 2023 WL 6292579, at *14 (S.D.N.Y. Sep. 27, 2023)).  "A discretionary stay is particularly appropriate when there is significant factual overlap between the remaining claims and the arbitrated claims." *Id.* (quoting *Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92, 110-11 (S.D.N.Y. 2017)); *see also Duke v. Luxottica U.S. Holdings Corp.*, 167 F.4th 16, 32 (2d Cir. 2026) ("[S]tay orders are particularly appropriate if the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit." (quoting *Genesco*, 815 F.2d at 856)).  "In such cases, proceeding with litigation against the remaining defendants 'would invariably implicate issues common to the claims against the [arbitrating] defendants and affect those defendants' interests.'" *Hawkins*, 2025 WL 890476, at *3 (quoting *Yost v. Everyrealm, Inc.*, No. 22-CV-6549 (PAE), 2023 WL 2859160, at *12 (S.D.N.Y. Apr. 10, 2023)); *see also Bravo Pizza Enters., Inc. v. Azizo*, No. 23-CV-4540 (HG), 2023 WL 5548372, at *9 (E.D.N.Y. Aug. 29, 2023) (staying claims not covered by arbitration agreement where "Plaintiff's breach of contract claim is based on the same core set of facts as Plaintiff's [non-arbitrable] claims" (citations omitted)); *Kumaran v.*

*Vision Fin. Mkts., LLC*, No. 20-CV-3871 (GHW), 2022 WL 17540669, at *7 (S.D.N.Y. Dec. 6, 2022) (staying claims not covered by parties' arbitration agreement while arbitration was pending).

Here, the same facts are likely to be at issue in both the litigation with the non-appearing Defendants and the arbitration with Bloomingdale's and Macy's. If Plaintiff were to litigate her claims against the non-appearing Defendants and concurrently arbitrate her claims against Bloomingdale's and Macy's, there is a risk of duplicative proceedings and inconsistent results. It is also possible that certain findings in the arbitration may affect the facts that may be offered in the litigation of the claims against the non-appearing Defendants. A stay of all proceedings, therefore, best serves the interests of all parties in this action, particularly where, as here, there is no indication that the non-appearing Defendants have been properly served.

The undersigned therefore respectfully recommends that the Court grant the request of Bloomingdale's and Macy's to stay this action pending the arbitration.

## IV. **Conclusion**

For the reasons set forth above, the undersigned respectfully recommends that the Court grant the present motion to compel arbitration and stay this action pending the outcome of arbitration.

A copy of this Report and Recommendation is being electronically served on counsel. Bloomingdale's and Macy's are directed to serve a copy of this Report and Recommendation on Plaintiff by overnight mail and first class mail at the following address:

Kimberly Persaud
723 Essex Street (PH)
Brooklyn, New York 11208

Bloomingdale's and Macy's are also directed to serve a copy of this Report and Recommendation on Plaintiff via email at: kimberly.persaud@email.phoenix.edu.

Defendants shall file proof of service by April 24, 2026.

27

Any objections to this Report and Recommendation must be filed within fourteen (14) days after service of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (d) (addressing computation of days).  Any requests for an extension of time for filing objections must be directed to Judge Gonzalez.  The "failure to object timely to a [magistrate judge]'s report operates as a waiver of any further judicial review of the [magistrate judge]'s decision."  *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (quoting *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d. Cir. 1989)).  Indeed, "a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point."  *Stevens v. Duquette*, No. 22-1571, 2024 WL 705954, at *1 (2d Cir. Feb. 21, 2024) (quoting *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003)).  Accordingly, the failure to file objections within this timeframe or specify the particular issues to be reviewed precludes further review of this Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Frego v. Kelsick*, 690 F. App'x 706, 709 (2d Cir. 2017) (appellate review barred because plaintiff failed to object to the magistrate judge's report and recommendation pertaining to the claim on which plaintiff now seeks to appeal (citing *Caidor*, 517 F.3d at 604)).

Dated:       Brooklyn, New York
             April 23, 2026

**SO ORDERED.**

 */s/ Joseph A. Marutollo*
JOSEPH A. MARUTOLLO
United States Magistrate Judge

28